[Civ. No. 51171. First Dist., Div. Two. June 26, 1981.]

ST. JOE PAPER COMPANY, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
ESPRIT DE CORP., Real Party in Interest.

[Civ. No. 51172. First Dist., Div. Two. June 26, 1981.]

CONSOLIDATED PACKAGING CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
ESPRIT DE CORP., Real Party in Interest.

992

### COUNSEL

Steinhart, Falconer & Morgenstein, Marvin D. Morgenstein, Jean L. Bertrand, Fulbright & Jaworski, B. J. Bradshaw, Layne E. Kruse, Richard Carrell, Ross, Hardies, O'Keefe, Babcock & Parsons, Michael H. King and Eric S. Palles for Petitioner.

No appearance for Respondent.

Francis O. Scarpulla, Stephen V. Scarpulla, Scarpulla & Scarpulla and Hazel Weiser, on behalf of Real Parties in Interest.

### OPINION

**TAYLOR, P. J.**—These petitions for writs of mandate,[1] pursuant to Code of Civil Procedure section 418.10, subdivision (c), seek review of the superior court's denial of the motions to quash service[2] filed by the nonresident defendant corporations, Consolidated Packaging Company (Consolidated) and St. Joe Paper (St. Joe), collectively paper companies. The paper companies are 2 of 34 foreign corporate defendants named by the real party in interest, Esprit De Corp. (Esprit) in its class action (No. 750975) filed under this state's anti-trust statute, the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.), alleging a national conspiracy to fix the prices of corrugated containers purchased by

---

[1]Initially, we denied both writs; our Supreme Court subsequently granted a hearing and retransferred them to us with directions to grant the alternative writ.

[2]Only the motions to quash service are before us at this time. Initially, the petitions also sought a stay. However, in No. 51173, we denied a writ seeking a stay on March 6, 1981, on substantially similar grounds as to one of the other foreign corporate co-defendants, Alton Box Board Company. No petition for a hearing was filed in No. 51173, and our decision is now final. Like the court below, we have been asked to take judicial notice of our files in No. 51173, and do so.

Esprit from out-of-state wholesalers or distributors, and delivered in California. ▮ The paper companies contend that Esprit has not met its burden of proving jurisdiction, as Esprit's allegations of nation-wide conspiracy and their activities in California are not sufficient "minimum contacts" to provide a basis for in personam jurisdiction under this state's long arm statute, Code of Civil Procedure section 410.10.[3] We do not agree and conclude that for the reasons set forth below, both petitions must be denied.

The petitions allege the following pertinent facts, which are not in dispute: Consolidated, a Michigan corporation with its principal place of business in Chicago, Illinois, is engaged in manufacturing corrugated containers at three plants located in Battle Creek, Michigan, Flint, Michigan, and Pulaski, Tennessee. Consolidated's western-most offices are in Chicago, Illinois. It has never sought to qualify to do business in California and has not owned any real property here. Consolidated had no business dealings with Esprit, and never has entered into any contract in California.

Consolidated, however, has made one sale to a California resident. In March 1974, Consolidated received an unsolicited telephone call at its Chicago office from Julius Goldman Egg City of Moore Park, California, for the purchase of corrugated containers at a cost of $29,412.90. The containers were shipped to Julius Goldman Egg City for its own use.

Consolidated also sells corrugated materials to the United States Government General Services Administration (GSA) in Michigan. The GSA buys corrugated materials from Consolidated in Battle Creek, Michigan, and ships some of these materials into California. Consolidated also sold corrugated cartons to California Canners, Inc.

St. Joe is a Florida corporation. Three or four times a year, two of St. Joe's salesmen have been sent to California to call on national companies that do business in other states in addition to California. The calls made by such salesmen in California do not result in any sales in California, as all of the resulting orders are for corrugated containers to be purchased from the St. Joe plant where they are produced and used locally.

---

[3]The statute provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

One direct purchaser from St. Joe, E.S.B., Inc., ships corrugated containers from a St. Joe plant to California. E.S.B. is headquartered in Philadelphia, Pennsylvania. E.S.B.'s purchase orders for containers originate in Philadelphia, and all of its payments to St. Joe are made from there. The containers to fill such orders are manufactured at St. Joe's Memphis, Tennessee plant. E.S.B. takes title to the goods at the plant and directs destination and shipment by common carrier; these shipments may go to any of 16 states, including California. St. Joe regularly sells boxes to E.S.B. with the knowledge that they will be used in California.

Esprit alleged that over a period of 11 years, each of the paper companies was engaged in an out-of-state price-fixing conspiracy to injure California consumers, in violation of the Cartwright Act, and reaped unusually high profits as a result of its unlawful activity.

The Judicial Council's comments to section 410.10 relating to service on foreign corporations, so far as pertinent, declare: "A state has power to exercise judicial jurisdiction over a foreign corporation which has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from such act ... unless the nature of the act and of the corporation's relationship to the state make the exercise of such jurisdiction unreasonable ...

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"A *state[has] power to exercise judicial* jurisdiction over a foreign corporation *which causes effects in the state by an* omission or *act done elsewhere with respect to causes* of action arising from these effects, unless the nature of the effects and of the corporation's relationship to the state make the exercise of such jurisdiction unreasonable." (Italics added.)

In *Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 446 [128 Cal.Rptr. 34, 546 P.2d 322], our Supreme Court agreed and stated in pertinent part: "The mere causing of an 'effect' in California, however, as acknowledged in the Judicial Council comment quoted above, is not necessarily sufficient to afford a constitutional basis for jurisdiction; notwithstanding this 'effect,' the imposition of jurisdiction may be 'unreasonable.' As was held in *Internat. Shoe Co.* v. *Washington, supra*, 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057], a suit may not be maintained where jurisdiction offends "'traditional notions of fair

play and substantial justice."' (*Id.*, at pp. 316-317 [90 L.Ed. at pp. 101-103] citations omitted.)"

The furthest extension of jurisdiction on the basis of foreign state activity allegedly causing harm in California are *Quattrone* v. *Superior Court* (1975) 44 Cal.App.3d 296 [118 Cal.Rptr. 548], and *United California Bank* v. *First Bank of Oak Park* (1979) 98 Cal.App.3d 439 [159 Cal.Rptr. 607] (U.S. cert. den.) In *Quattrone*, the court upheld the exercise of jurisdiction over a nonresident defendant, a Pennsylvania resident, who had prepared deceptive financial data intended to be acted upon in California to determine the rate of exchange for corporate shares to be issued in this state. After discussing *Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed. 1283, 78 S.Ct. 1228], and *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199], the court stated the rule governing the exercise of jurisdiction on such a basis as follows: "From *McGee* and *Hanson* we conclude that it is reasonable to exercise jurisdiction on the basis of the defendant intentionally causing 'effects in the state by an omission or act done elsewhere' whenever (a) the effects are of a nature 'that the State *treats as exceptional and subjects to special regulation,*' or (b) the defendant has, *in connection with his causing such effects in the forum state, invoked 'the benefits and protections of its laws.'*" (*Quattrone, supra,* at p. 306; italics added.) In *United California Bank, supra,* this court followed *Quattrone* and held reasonable the exercise of jurisdiction over a foreign bank which issued a certificate of deposit, knowing the borrower would take it to California and use it as security for a loan and that the security would be worthless because of the bank's right of offset. We based our conclusion on: 1) the bank did an intentional act, knowing it would cause effects in California, the nature of which California deems exceptional and subject to special regulation; 2) the bank anticipated an economic benefit from its act which caused the effect in this state.

Here, as in *Quattrone*, and *United California Bank*, both *supra*, this state treats anti-trust violations as subject to the special regulation of the Cartwright Act. We note that immediately after the United States Supreme Court in *Illinois Brick Co.* v. *Illinois* (1977) 431 U.S. 720 [52 L.Ed.2d 707, 97 S.Ct. 2061], limited the jurisdiction of the federal courts to adjudication of direct purchase anti-trust damage actions, the California Legislature amended Business and Professions Code section 16750 to add the second paragraph of subdivision (a), as set forth, so

far as pertinent, below.[4] (Stats. 1978, ch. 536, § 1.) Thus, Esprit, as an indirect purchaser, was precluded from raising its Cartwright anti-trust claims against the paper companies in any forum except California.[5] (Cf. Code Civ. Proc., § 410.30.)

■ The minimum contacts of a defendant with a state need not arise from actual physical activity of the defendant in a forum state. Activities taking place in other states which entail foreseeable effects in a forum state may be sufficient to satisfy the minimum contacts requirement of *International Shoe Co., supra.* (See *Great Western United Corp.* v. *Kidwell* (5th Cir. 1978) 577 F.2d 1256, 1266; *Wilkerson* v. *Fortuna Corp.* (5th Cir. 1977) 554 F.2d 745, 747; *Travis* v. *Anthes Imperial Limited* (8th Cir. 1973) 473 F.2d 515; *Eyerly Aircraft Co.* v. *Killian* (5th Cir. 1969) 414 F.2d 591; *Hitt* v. *Nissan Motor Company, Ltd.* (S.D.Fla. 1975) 399 F.Supp. 838, vacated on other grounds 552 F.2d 1088; *Maricopa County* v. *American Petrofina, Inc.* (N.D.Cal. 1971) 322 F.Supp. 467; *In-Flight Devices Corporation* v. *Van Dusen Air, Inc.* (6th Cir. 1972) 466 F.2d 220.)

*Maricopa, supra,* is helpful here as there the nonresident corporate defendant was served with a complaint alleging its participation in an anti-trust price-fixing conspiracy in California that injured an Arizona plaintiff. In affirming the denial of a motion to quash, the court held that if a person engages in an out-of-state conspiracy that *is designed to and affects the prices charged* in the forum state, the forum state has jurisdiction of the conspirators. *Kaiser Aetna* v. *Deal* (1978) 86 Cal. App.3d 896 [150 Cal.Rptr. 615], cited by the paper companies, is inapposite. In *Kaiser,* there was no evidence that the nonresident defendants had engaged in a conspiracy with the intent of causing tortious effects in California. This court (Div. Four) held that the tortious act of the

---

[4]"(a) Any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor in any court having jurisdiction in the county where the defendant resides or is found, or any agent resides or is found, or where service may be obtained, without respect to the amount in controversy, and to recover three times the damages sustained by him, and shall be awarded a reasonable attorneys' fee together with the costs of the suit.

"Such action may be brought by any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter, *regardless of whether such injured person dealt directly or indirectly* with the defendant." (Italics added.)

[5]The federal District Court of Northern California concluded that it lacked authority to issue an injunction against the instant state proceedings, and remanded the matter to the superior court.

resident conspirator could not be imputed to the nonresidents for purposes of assuming personal jurisdiction.

Contrary to the contentions of the paper companies, the holding in *Maricopa, supra*, was not superceded or eliminated by *World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286 [62 L.Ed.2d 490, 100 S.Ct. 559]. In *World-Wide*, the United States Supreme Court, in discussing *International Shoe* and *McGee*, observed at pages 292-293 [62 L.Ed.2d at page 498]: "The relationship between the defendant and the forum must be such that it is 'reasonable...to require the corporation to defend the particular suit which is brought there.' 326 U.S., at 317. Implicit in this emphasis on unreasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered *in light of other relevant factors, including the forum State's interest in adjudicating the dispute*, see *McGee* v. *International Life Ins. Co.* 355 U.S. 220, 223...; the *plaintiff's interest* in obtaining convenient and effective relief, see *Kulko* v. *Superior Court, supra*, at 92, ..., *at least when that interest is not adequately protected* by the plaintiff's power to choose the forum, ....; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, ....

"The limits imposed on state jurisdiction by the Due Process Clause, in its role as a guarantor against inconvenient litigation, have been substantially relaxed over the years. As we noted in *McGee* v. *International Life Ins. Co., supra*, at 222-223..., this trend is largely attributable to a *fundamental transformation in the American economy* ...." (Italics added.)

*World-Wide Volkswagen, supra*, involved a negligence action (as distinct from the intentional acts involved here), and the court concluded that the mere fortuitous presence in Oklahoma of a defective automobile sold by a New York retailer and wholesaler was not enough to invoke the in personam jurisdiction of the Oklahoma courts. Here, of course, each paper company admitted deliveries to California consumers. Further, the U.S. Supreme Court, in discussing the requisite "minimum contacts" at page 297 [62 L.Ed.2d at page 501], observed that: "This is not to say, of course, that *foreseeability is wholly irrelevant*. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the *defendant's conduct and connection* with

the forum State are such that he should reasonably anticipate being haled into court there .... The Due Process Clause, by ensuring the 'orderly administration of the laws,' ... gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

■ "When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' *Hanson* v. *Denckla*, at 253, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but *arises* from the efforts of the manufacturer or distributor to *serve, directly or indirectly, the market for its product in other States, it ·is not unreasonable to subject it to suit in one of those States....*" (Italics added.)

■ Here, the paper companies admittedly elected to indirectly serve the market in California and made sales and deliveries at artificially fixed prices that allegedly harmed California consumers. The paper companies expected an economic benefit from their deliveries in this state. As a result of their. alleged price-fixing activities, they reaped an unusually high profit at the expense of California consumers. Thus, the paper companies availed themselves of the privilege of conducting activities that invoked the benefits and protections of the laws of this state (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 144 [127 Cal.Rptr. 352, 545 P.2d 264]).

We also note that the deliveries by the paper companies met the alternate test of economic activity in this state. In evaluating their activities, we focus upon the economic reality rather than any mechanical checklist. The court in *Foster* v. *Mooney Aircraft Corp.* (1977) 68 Cal.App.3d 887, at page 892 [137 Cal.Rptr. 694], stated: "An enterprise obtains the benefits and protection of our laws if as a matter of commercial actuality it has engaged in economic activity within this state. [Citation.] A manufacturer engages in economic activity within a state as a matter of commercial actuality *whenever the purchase or use of its product within the state generates gross income* for the *manufacturer* and is *not so fortuitous or unforeseeable* as to negative the existence of an intent on the manufacturer's part to bring about this re-

sult. [Citation.] *That the manufacturer deals with the residents of the state indirectly rather than directly, or requires orders to be accepted at the home office, is not determinative.* [Citations.]" (Italics added.) Thus, an analysis of the nonresident manufacturer's activities must focus upon *"the actual economic benefit"* derived from such activities. Where the manufacturer sells its products in circumstances such that it knows or should reasonably anticipate that its products will *ultimately be resold in a particular state*, it should be held to have purposefully availed itself of the market for its products in that state. (*Buckeye Boiler Co. v. Superior Court* (1969) 71 Cal.2d 893, 901 [80 Cal.Rptr. 113, 458 P.2d 57].)

When the cause of action *arises out of the forum-related economic activity*, the forum state will entertain jurisdiction over the nonresident defendant. An *isolated act of economic activity*, such as the making and performance of a contract in the forum state, *may be sufficient* to accord the forum state jurisdiction over the defendant when the cause of action is related to that isolated act of economic activity (*McGee v. International Life Ins. Co., supra*, 355 U.S. 220, 223; *Martin v. Detroit Lions, Inc.* (1973) 32 Cal.App.3d 472, 475 [108 Cal.Rptr. 23]).

The petitions are denied and the alternative writs discharged.

Miller, J., and Smith, J., concurred.

Petitions for a rehearing were denied July 24, 1981, and petitioners' applications for a hearing by the Supreme Court were denied September 2, 1981.