[Civ. No. 65403. Second Dist., Div. One. Dec. 15, 1982.]

SHIRLEY JONES et al., Plaintiffs and Appellants, v.
IAIN CALDER et al., Defendants and Respondents.

**COUNSEL**

Hayes & Hume, Paul S. Ablon and Richard P. Towne for Plaintiffs and Appellants.

Williams & Connolly, John G. Kester, F. Lane Heard III, Selvin & Weiner and Paul P. Selvin for Defendants and Respondents.

## OPINION

**LILLIE, J.**—Plaintiffs appeal from an order granting motion to quash out-of-state service of process[1] upon two of the defendants in an action to recover compensatory and punitive damages for libel, invasion of privacy and intentional infliction of emotional distress.

The verified complaint alleges: Defendant National Enquirer, Inc. is a Florida corporation transacting business in California; it publishes the National Enquirer, a weekly periodical of national circulation. Defendant Iain Calder is the editor of the periodical. Defendant John South is a writer employed by the corporate defendant. At all times mentioned, Calder and South acted in the scope of their employment and also acted "by virtue of their own motives as individuals." In the October 9, 1979, issue of the National Enquirer defendants printed and published an untrue and libelous article concerning plaintiffs, Shirley Jones and Marty Ingels.[2] That issue was sold and distributed in the County of Los Angeles, where plaintiffs are well known and enjoy good names and reputations both personally and in their occupations as professional entertainers. In making said publication defendants acted maliciously and with intent to injure, defame and disgrace plaintiffs, place them in a false light, and cause them to suffer humiliation and emotional and physical distress. In their actions directed toward plaintiffs, both before and after publication of said article, defendants caused plaintiffs to suffer great emotional distress. Defendants failed to comply with plaintiffs' demand for publication of a retraction of the defamatory article.

Calder and South are residents of Florida and process was served on them in Florida by mail (Code Civ. Proc., §§ 415.30, 415.40). They appeared specially and moved to quash service of the summons on the ground that the court lacked personal jurisdiction over them.[3] (Code Civ. Proc., § 418.10) The affidavits of Calder and South in support of the motion state that each is employed by National Enquirer, Inc.—Calder as its president and editor, and South as a reporter; each has his place of business at Enquirer headquarters, located in Florida; neither Calder nor South has ever had an office or place of business in California, or engaged in business there; neither has ever owned assets, obtained employment or had a bank account in California; Calder performed editorial services in Florida in connection with the article which is the subject of plaintiffs' lawsuit, but did not otherwise participate in the preparation of that ar-

---

[1] The order is appealable. (Code. Civ. Proc., § 904.1, subd. (c).)

[2] Attached to the complaint and incorporated therein by reference is a copy of the article. South's name appears at the end of the article, indicating that he is its author.

[3] Defendant National Enquirer, Inc. did not contest the court's jurisdiction over it, and has answered the complaint.

ticle; South performed reporting services in Florida in connection with the subject article; in performing their respective services relating to that article, neither Calder nor South was acting in his personal capacity and neither traveled to California.

In opposition to the motion to quash, plaintiffs filed declarations and excerpts from depositions showing: As president and editor of National Enquirer, Inc., Calder's duties "are to oversee just about every function of the Enquirer . . . to oversee the whole editorial process." Prior to publication of the allegedly defamatory article concerning plaintiffs, Calder reviewed its evaluation and saw the final page proof form; after publication he determined not to print a retraction. In the three or four years preceding publication of that article, Calder traveled to California only once; that trip was for pleasure, not on business for the National Enquirer. During the same period, South traveled to California more than 20 times on Enquirer business, staying an average of one to two weeks each time. From 1977 to October 1979 Jane Chesis, a California resident, was employed by National Enquirer, Inc. to furnish it with leads for stories. Chesis introduced South to one Bobby Lucas. A year before the subject article was published, South met with Lucas in California on two occasions to discuss possible articles for the Enquirer; during the same period South had 20-25 telephone conversations with Lucas. Lucas provided information for some of the material which appeared in the subject article. By telephone Chesis (in California) supplied South (in Florida) with other material contained in that article. Two or three weeks before the article was published, South telephoned plaintiff Ingels at his home in California and read the article to him; as a result Ingels became emotionally upset and physically ill.

In granting the motion to quash, the trial court (in its memorandum of decision) stated: "From the record in this case, it appears that neither South nor Calder maintained any residence or business office within California. Editor Calder did not enter California nor even make telephone calls into the state during his work on the Ingels article. Reporter South made a few telephone calls into California, including one in which he read the substance of the article to plaintiff Ingels shortly before its publication. In addition, it may fairly be inferred from the record before the Court that Reporter South visited California at least once for purposes relating to the article. The totality of such contacts, in this Court's view, are [sic] insubstantial." The court further determined that in a defamation action such as this, where freedom of the press is involved, "First Amendment considerations should be weighed in the balance of fundamental fairness in resolving whether a state can compel a nonresident defendant to appear and defend an action." The court concluded that such considerations necessitated the granting of the motion to quash.

■ Plaintiffs contend that the trial court improperly applied a special First Amendment test in determining that the court may not assume jurisdiction over defendants Calder and South. We agree. As authority for its application of such a test, the court cited *New York Times Company* v. *Connor* (5th Cir. 1966) 365 F.2d 567, wherein it was held that "First Amendment considerations surrounding the law of libel require a greater showing of contact to satisfy the due process clause than is necessary in asserting jurisdiction over other types of tortious activity." (P. 572. See also *Rebozo* v. *Washington Post Company* (5th Cir. 1975) 515 F.2d 1208, 1214-1215; *Edwards* v. *Associated Press* (5th Cir. 1975) 512 F.2d 258, 266.) This view has been rejected in other federal courts (including those of the Ninth Circuit), which conclude that First Amendment protections are better considered in the context of substantive defenses on the merits than at the initial jurisdictional stage of a defamation proceeding. (*Church of Scientology of California* v. *Adams* (9th Cir. 1978) 584 F.2d 893, 899; *Anselmi* v. *Denver Post, Inc.* (10th Cir. 1977) 552 F.2d 316, 324, cert. den., 432 U.S. 911 [53 L.Ed.2d 1084, 97 S.Ct. 2960].) And in California it has been held that newspapers do not enjoy a special preference under the First Amendment in deciding in personam jurisdiction questions dealing with the publication of allegedly tortious material. (*Sipple* v. *Des Moines Register & Tribune Co.* (1978) 82 Cal.App.3d 143, 148-150 [147 Cal.Rptr. 59] (hg. den.).) After discussing the concurring opinion of Chief Justice Burger in *First National Bank of Boston* v. *Bellotti* (1978) 435 U.S. 765, 796-802 [55 L.Ed.2d 707, 730-734, 98 S.Ct. 1407, 1426-1439], the *Sipple* court stated: "The conclusion of the Chief Justice that the First Amendment fails to give special protection to the 'institutional press' under a freedom of the press theory parallels the finding that it also fails to give special protection from jurisdiction to defendants whose tortious acts performed out of state arise from exercise of rights arguably protected by the First Amendment. Though the *Connor* decision, relied on by respondents, appears to give such protection, that decision 'has been widely criticized and disregarded [citations], and appears now to have been discarded by the Fifth Circuit itself [citations].' (*David* v. *National Lampoon, Inc.* (D.S.C. 1977) 432 F.Supp. 1097, 1100; accord *Anselmi* v. *Denver Post, Inc.* (10th Cir. 1977) 552 F.2d 316, 324.)" (82 Cal.App.3d at p. 149.)

Inasmuch as defendants Calder and South have no special First Amendment privilege by virtue of their status as employees of the publisher of the allegedly defamatory article herein, the right of a California court to assert personal jurisdiction over them must be determined in accord with traditional principles unaffected by First Amendment considerations.

■ Code of Civil Procedure section 410.10 permits California courts to exercise jurisdiction over nonresidents "on any basis not inconsistent with the Constitution of this state or of the United States." This statute "manifests an intent to exercise the broadest possible jurisdiction. The constitutional perimeters

of this jurisdiction are found in the decisions of the United States Supreme Court." (*Michigan Nat. Bank* v. *Superior Court* (1972) 23 Cal.App.3d 1, 6 [99 Cal.Rptr. 823].) As a general constitutional principle, a court may exercise personal jurisdiction over a nonresident so long as he has such minimal contacts with the state that ". . . the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316-317 [90 L.Ed. 95, 101-103, 66 S.Ct. 154]; *Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].) "If a nonresident defendant's activities may be described as 'extensive or wide-ranging' [citation] or 'substantial . . . continuous and systematic' [citation], there is a constitutionally sufficient relationship to warrant jurisdiction for all causes of action asserted against him. In such circumstances, it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum. [¶] If, however, the defendant's activities in the forum are not so pervasive as to justify the exercise of general jurisdiction over him, then jurisdiction depends upon the quality and nature of his activity in the forum in relation to the particular cause of action. . . . The crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action arises out of or has a substantial connection with that activity, and upon the balancing of the convenience of the parties and the interests of the state in assuming jurisdiction. [Citations.]" (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147-148 [127 Cal.Rptr. 352, 545 P.2d 264].)

Applying these rules to the instant case, it is clear that California does not have general jurisdiction over defendants Calder and South. Neither defendant has ever owned assets or bank accounts in California, or engaged in business or been employed there. It may not be said that defendants' activities in California are extensive, wide-ranging, substantial, continuous or systematic. In *Cornelison, supra,* 16 Cal.3d 143, the court considered facts which revealed that the defendant had made 20 trips a year into California over a period of 7 years to deliver and obtain goods, had an independent contractor relationship with local brokers, and was licensed to haul freight by the California Public Utilities Commission; the court failed to find in these facts a basis for general jurisdiction by California courts. If general jurisdiction did not there exist, clearly there can be no general jurisdiction in the present case as a result of defendants' contacts with California consisting of occasional trips to that state. We now proceed to an assessment of the relationship between defendants' activities in California and the causes of action alleged herein.

As the trial court observed, defendant Calder did not enter California or even make telephone calls into the state in connection with his role in the preparation of the subject article; all of his acts with reference to that article apparently were performed in Florida. However, the requisite minimum contacts of a defendant with the forum state need not arise from his physical activity in that

state. (*St. Joe Paper Co.* v. *Superior Court* (1981) 120 Cal.App.3d 991, 997 [175 Cal.Rptr. 94].) "Every state has a natural interest in effects occurring within its territory, even if the act causing those effects was committed elsewhere. (See Rest.2d Conf. of Laws, § 37, com. a.) . . . [¶] If a defendant commits an act or omission outside the forum state *with the intent* to cause a tortious effect within the state, the state may exercise jurisdiction over the defendant as to any cause of action arising from the effects. *The intent to cause tortious injury within the state when the tort actually occurs is generally a sufficient basis, without more, for the exercise of in personam jurisdiction.* 'The act may have been done with the intention of causing effects in the state. If so, the state may exercise the same judicial jurisdiction over the actor, or over the one who caused the act to be done, as to causes of action arising from these effects as it could have exercised if these effects had resulted from an act done within its territory.' (Rest.2d Conf. of Law, § 37, com. a; see § 36, subd. (1).)" (*Kaiser Aetna* v. *Deal* (1978) 86 Cal.App.3d 896, 902 [150 Cal.Rptr. 615]; latter italics added. See also Judicial Council Comment, 14 West's Anno. Code Civ. Proc., p. 473; *Quattrone* v. *Superior Court* (1975) 44 Cal.App.3d 296, 303-304 [118 Cal.Rptr. 548].) The complaint herein alleges that defendants, in publishing the defamatory article, acted maliciously and with the intent to injure plaintiffs. The general rule for defamation is that everyone who takes a responsible part in the publication is liable for the defamation. (*McGuire* v. *Brightman* (1978) 79 Cal.App.3d 776, 789 [145 Cal.Rptr. 256].) For the purpose of determining whether a California court may assume jurisdiction over Calder in this lawsuit, it must be presumed that Calder, in participating in the publication of the article as its editor, intended to cause injury to plaintiffs in California where they reside; such injury in fact occurred. Accordingly, a valid basis exists for California's exercise of personal jurisdiction over Calder with respect to the causes of action alleged herein.

In support of a contrary conclusion, defendants cite *Sibley* v. *Superior Court, supra,* 16 Cal.3d 442, wherein it is stated (p. 446): "The mere causing of an 'effect' in California . . . is not necessarily sufficient to afford a constitutional basis for jurisdiction; notwithstanding this 'effect,' the imposition of jurisdiction may be 'unreasonable.'" *Sibley* was a breach of contract action and it was there held that despite defendant's relationship to California, and the effects thereby caused in California, the exercise of jurisdiction was unreasonable because it did not appear that defendant purposefully availed himself of the privilege of conducting business in California or of the benefits and protections of California laws, that defendant anticipated any economic benefit as a result of his dealings in this state, or that there were any aspects of the transaction which were subject to special regulation in California. However, such conditions need not be met where jurisdiction is predicated on an act or omission committed outside the forum state with the intent to cause a tortious effect within the state. Thus, in *Abbott Power Corp.* v. *Overhead Electric Co.* (1976)

60 Cal.App.3d 272 [131 Cal.Rptr. 508], an action for intentionally inducing breach of contract, the court, after discussing *Sibley*, stated: "There is no reason to require any special circumstances where, as here, the conduct charged is an intentional and malicious tort against a forum-based corporation. The fundamental question is whether the exercise of jurisdiction is fair and reasonable. It is just as reasonable and fair, maybe more so, to subject a defendant to the jurisdiction of a state when it engages in conduct which is purposefully intended to harm a resident of that state as it is to subject a defendant to the jurisdiction of a state when the defendant has sought or anticipated economic benefit in that state from its out-of-state activities." (Pp. 281-282; fn. omitted.)

The foregoing analysis likewise applies to defendant South insofar as his writing and reporting activities in connection with the subject article were performed in Florida. Moreover, apart from the tortious effect which his Florida activities produced in California, South had other contacts with California sufficient to permit the courts of that state to assume personal jurisdiction over him in this action. The record shows that he gathered information appearing in the allegedly defamatory article in the course of at least one visit made by him to California and telephone calls which he made to the state. Expressed differently, the material for the article had its source in California and South tapped that source both by telephone and by personal visits to California. In addition, before the article was published South telephoned plaintiff Ingels at his residence in California and read to him the substance of the article, thereby causing him to suffer emotional distress accompanied by physical illness. In *Abbott Power Corp.* v. *Overhead Electric Co., supra,* 60 Cal.App.3d 272, it was held that nonresident defendants' sending of letters into California which interfered with plaintiff's contractual relationship constituted the doing of a significant act in California for purposes of exercising jurisdiction over defendants. (P. 279.) By the same token South's telephone call to Ingels, which call was instrumental in the commission of one of the torts of which plaintiffs complain, constituted the doing of a significant act in California. For all of the above reasons, we conclude that South had sufficient minimum contacts with the State of California in respect to the causes of action at issue to justify assumption of jurisdiction by a California court over him in this lawsuit.

Defendants argue that California may not assume jurisdiction over them because they performed the allegedly tortious acts in their respective capacities as officer and employee of the corporate defendant, not as individuals.[4] In sup-

---

[4]In its memorandum of decision, the trial court stated: "It may not be unfair to hold a publisher to account for compensatory and punitive damages in a remote jurisdiction if a sensational story he publishes is false. After all, it is the publisher who balances risk and reward in establishing the character of his publication, and it is the publisher who stands to make substantial profits if he publishes true stories of widespread interest. [¶] It is quite another matter to hold magazine employees to the same accounting. . . ."

port of this contention defendants cite *Bulova Watch Co., Inc.* v. *K. Hattori & Co., Ltd.* (E.D.N.Y. 1981) 508 F.Supp. 1322, wherein it is stated: "Under the 'fiduciary shield' doctrine, the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity." (P. 1347. See also *Forsythe* v. *Overmyer* (9th Cir. 1978) 576 F.2d 779, 783-784, cert. den., 439 U.S. 864 [58 L.Ed.2d 174, 99 S.Ct. 188]; *Quattrone* v. *Superior Court, supra,* 44 Cal.App.3d 296, 308.) Defendants' affidavits in support of their motion to quash service of summons state that defendants, in performing their services relating to the subject article, were acting on behalf of the National Enquirer, Inc., and not in "a personal capacity." However, as stated in *Donner* v. *Tams-Witmark Music Library, Inc.* (E.D.Pa. 1979) 480 F.Supp. 1229, 1234: "It would be anomalous, and would defeat the purposes of the law creating substantive liability, to permit a corporate officer to shield himself from jurisdiction by means of the corporate entity, when he could not interpose the same shield as a defense against substantive liability. Therefore we hold that Aborn's allegedly tortious conduct in his capacity as president of Tams-Witmark may be considered to determine whether the court has jurisdiction over Aborn as an individual defendant." Unlike Calder, South is an employee rather than an officer of the corporate defendant. That fact, however, does not prevent the assumption of jurisdiction over him in this action. Thus, in *McGuire* v. *Brightman, supra,* 79 Cal.App.3d 776, the court rejected defendant's argument that jurisdiction over him was improper because he was a reporter, not the publisher of the defamatory article. Said the court: "Appellant has cited no authority for any contention that he may have that an author is not a proper defendant in an action for libel printed in a periodical. To the contrary, the general rule for defamation is that everyone who takes a responsible part in the publication is liable for the defamation. [Citation.] And even if appellant could somehow avoid liability for his acts for [the publisher], it would not follow that jurisdiction could not be maintained based upon those acts. Thus, it seems clear that appellant's status as the author instead of the publisher does not create a legal distinction invalidating jurisdiction over him. [Citations.]" (79 Cal.App.3d at p. 789.)

Once it is established that the defendant has the required minimum contacts in the forum state and that the cause of action is sufficiently connected with these minimum contacts, the propriety of an assumption of jurisdiction depends upon a balancing of the inconvenience to the defendant in having to defend himself in the forum state against both the interest of the plaintiff in suing locally and the interrelated interest of the state in assuming jurisdiction. (*Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 899 [80 Cal.Rptr. 113, 458 P.2d 57].) Some of the factors involved in this balancing process include the relative availability of evidence and the burden of defense and prosecution in one place rather than another; the interest of a state in providing a forum for its residents;

the ease of access to an alternative forum; the avoidance of a multiplicity of suits and conflicting adjudications; and the extent to which the cause of action arose out of defendant's local activities. (*Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, 151; *Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222, 225-226 [1 Cal.Rptr. 1, 347 P.2d 1].)

In the present case, much of the evidence presumably is in California inasmuch as that is where the causes of action arose, where plaintiffs reside and pursue their careers, and where they are most seriously damaged by the alleged torts; California also is the residence of two of the persons (Chesis and Lucas) who furnished material appearing in the defamatory article published by defendants. The California Supreme Court "has repeatedly emphasized that this state and its residents and taxpayers have a substantial interest in providing a forum where a resident may seek whatever redress is due him. [Citations.] The state also has an interest from the point of view of the orderly administration of the laws in assuming jurisdiction in cases where most of the evidence is within its borders and where a refusal to take jurisdiction may result in multiple litigation. [Fn. omitted.]" (*Hall* v. *University of Nevada* (1972) 8 Cal.3d 522, 525-526 [105 Cal.Rptr. 355, 503 P.2d 1363].) In their respective capacities as president-editor and reporter-writer for the National Enquirer, Calder and South most likely will be required to appear as witnesses and thus will be present in California regardless of whether a California court assumes jurisdiction over them as defendants. Plaintiffs sued National Enquirer, Inc. as well as Calder and South; the corporate defendant has not contested the California court's jurisdiction over it and the action is proceeding against it. If California does not assume jurisdiction over Calder and South plaintiffs may sue them in Florida, resulting in multiple litigation and possible conflicting adjudications. Finally, the torts of which South is accused relate directly to, and arise out of, his local conduct. Under these circumstances, it is fair and reasonable to subject defendants Calder and South to the jurisdiction of the California courts.

The order granting motion to quash service of process is reversed.

Spencer, P. J., and Dalsimer, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 10, 1983.