[No. D003409. Fourth Dist., Div. One. June 26, 1986.]

JAMES FARRIS, Plaintiff and Appellant, v.
CAPT. J. B. FRONAPFEL COMPANY, Defendant and Respondent.

984

**COUNSEL**

Thomas G. Gilmore for Plaintiff and Appellant.

Harmsen, Carpenter & Wilkinson and Samuel Carpenter for Defendant and Respondent.

**OPINION**

**LEWIS, J.**—Plaintiff James Farris appeals from the judgment entered in favor of defendant and respondent Capt. J. B. Fronapfel Company, granting respondent's motion to quash service of summons.

I

Farris purchased a 55-foot yacht known as the *Kajun Lady* from a Delaware corporation, Kajun Lady, Inc., in Florida. Farris is a resident of El Cajon, California, and he contacted defendant James Crutchfield dba Crutchfield Yacht and Shipbrokers in California and met with Crutchfield, a California resident, in San Diego, California. Crutchfield was acting as the west coast broker for the yacht. Broward Marine, Inc. (Broward), a Florida corporation, was acting as the east coast broker in Florida. On September 1, 1982, Farris traveled to Florida, viewed the vessel which was berthed on the premises of Broward marine, and was told by Broward that an objective marine survey of the vessel could be obtained from Capt. J. B. Fronapfel Company (Fronapfel). On September 18, 1982, Fronapfel performed a survey of the vessel and issued a report which stated essentially that the vessel was in good condition and had an estimated value of $250,000. The survey document listed Farris as the client, included his California address and recommended certain steps be taken to prepare the boat for the passage to California and for use in California. Farris relied on Fronapfel's survey and purchased the vessel in Florida, paid for the vessel in Florida, hired a captain and made other arrangements to return the vessel to California. Fronapfel was contacted by Broward and requested to perform the services and at Fronapfel's request payment for the vessel was made directly by Broward. When the vessel arrived in San Diego, California, in May 1983, it had suffered damage in a storm in the waters off California and Mexico. The vessel was inspected by Farris's insurance carrier and it was discovered that major structural damage and other defects were present in the vessel and the defects had existed at the time of the survey by Fronapfel. The cost to repair the preexisting damage exceeded the value of the vessel. Farris sued Crutchfield, Kajun Lady, Inc., Capt. J. B. Fronapfel Company and Broward Marine, Inc., in the Superior Court of the State of California in and for the County of San Diego. The complaint states one cause of action, for deceit, and alleges that Fronapfel falsely and fraudulently represented to Farris that he had properly inspected the vessel and that the vessel was in excellent condition and had a market value of $250,000. The complaint alleges that the representations were false in that the vessel had major damage and defects and that the damage and defects rendered the vessel valueless. The complaint further alleges that when Fronapfel made the representations he knew they were false and made them with the intent to defraud and deceive Farris and with the intent to induce Farris to purchase the vessel. Farris alleges that he has been damaged in that he was induced to spend time and energy in traveling to Florida and Jamaica, that he was induced to employ a captain to sail the vessel to San Diego and has paid money for the purchase, insuring and repairing of the vessel and that he has lost the use and enjoyment

of the vessel and the loss of profits through the inability to resell the vessel at a profit. The complaint seeks compensatory damages and punitive damages for oppression, fraud and malice in the sum of $500,000.

Fronapfel moved to quash service of summons on the ground the court lacked jurisdiction. Fronapfel filed a declaration showing that he is the sole proprietor of the company and for 32 years has been a resident of the State of Florida. The company's only place of business is in Ft. Lauderdale, Florida. The company has not been a corporation since 1969 and it has no business office in the State of California nor in any state other than Florida. Fronapfel has his driver's license in Florida, files his tax returns from Florida, has used the Ft. Lauderdale address consistently for the past 28 years. All of his automobiles are registered in Florida. He owns property in Florida, pays Florida taxes. His children have never attended any California schools. He has never had an agent for service of process in California and has never purchased any advertisements in any media calculated to reach the State of California and to the best of his knowledge, no such advertisements have reached California. He has no bank accounts, business or personal, in the State of California nor any interest in any property, real or personal, in the State of California. He has traveled to California on business in 1978 and 1979 for the survey of a yacht, *San Su Cher III*, and in 1983 for the survey of the yacht *No Problem*, in both instances traveling to California at the request of a business acquaintance made in Ft. Lauderdale, Florida, a Mr. Meyers for whom he has also conducted 12 surveys in Florida. He does not know Crutchfield, Crutchfield Yacht and Shipbrokers or James Farris and therefore requested that payment for his services be rendered directly from Broward Marine, Inc., and Broward agreed to pay him directly and did so. He has never met, talked to, corresponded with nor seen Farris. He knew at the time of the survey of the *Kajun Lady* that it was for a potential buyer named Farris but he delivered his survey to Broward Marine, Inc., a Florida corporation.

Page 1 of the survey lists Farris as "the client" and lists his home address as El Cajon, California. The survey on page 4 recommends that "[u]pon arrival in California the ground tackle should be upgraded as required for Pacific Coast usage." Also on page 4 the survey states "[t]he Coast Guard is advising that any yacht contemplating an international passage" and "[i]t is recommended that an inflatable life raft be carried aboard for the passage to California."

## II

The law defining the limits of state court jurisdiction over nonresident defendants begins with *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S.

310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057], setting out the rule that the forum state may not exercise jurisdiction over a nonresident unless his relationship to the state is such as to make the exercise of such jurisdiction reasonable. If a nonresident defendant's activities are "extensive or wide-ranging" (*Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57]) in California or "substantial . . . continuous and systematic" (*Perkins* v. *Benguet Mining Co.* (1952) 342 U.S. 437, 447-448 [96 L.Ed. 485, 493-494, 72 S.Ct. 413]), there is a constitutionally sufficient relationship to support jurisdiction for any cause of action. (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264].) California Code of Civil Procedure section 410.10 provides that a California court may exercise jurisdiction on any basis not inconsistent with the Constitution of California or of the United States. Capt. Fronapfel's connections with the State of California are not sufficient to subject him to general jurisdiction. (See, for example, *Jones* v. *Calder* (1982) 138 Cal.App.3d 128 [187 Cal.Rptr. 825], affirmed sub. nom. *Calder* v. *Jones* (1984) 465 U.S. 783 [79 L.Ed.2d 804, 104 S.Ct. 1482]; *Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, in which a defendant who had made 20 trips a year into California over a period of 7 years to deliver and obtain goods was licensed to haul freight by the California Public Utilities Commission and had a contractual relationship with brokers in California was held not to have subjected himself to the general jurisdiction of the California courts.)

Where the defendant's activities in the forum state are not so pervasive as to justify the exercise of general jurisdiction, then jurisdiction depends upon the quality and nature of the defendant's activities in the forum in relation to the particular cause of action. (*Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, 148.) "In such a situation, the cause of action must arise out of an act done or transaction consummated in the forum, or defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Thus, as the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts, and fairness is assured by limiting the circumstances under which the plaintiff can compel him to appear and defend. The crucial inquiry concerns the character of the defendant's activity in the forum, whether the cause of action arises out of or has a substantial connection with that activity, and upon the balancing of the convenience of the parties and the interests of the state in assuming jurisdiction." (*Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, 148, fn. omitted.)

In reviewing the order granting the motion to quash service of the summons, the facts must be viewed most favorably to the defendant. (*Bel-*

*mont Industries, Inc.* v. *Superior Court* (1973) 31 Cal.App.3d 281, 283 [107 Cal.Rptr. 237].) There is no substantial conflict between the parties as to the relevant facts in the declarations, and if there were any we would be required to presume that the trial court resolved any such conflicts in support of its order. (*Ibid.*)

 In those cases where jurisdiction is sought on the basis of defendant's occasional activities, it is essential that there be some act by which the defendant purposely avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. (*Hanson* v. *Denckla* (1958) 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1297, 78 S.Ct. 1228].) Fronapfel has done no act in the State of California in connection with the transaction upon which Farris sues.

Even in the case of a manufacturer of a product, the United States Supreme Court has held that foreseeability that a manufacturer's product would enter or cause injury in the forum state is not itself a sufficient basis for the assertion of jurisdiction over the manufacturer. (*World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286, 297-298 [62 L.Ed.2d 490, 501-502, 100 S.Ct. 559].) There plaintiffs purchased an automobile in New York, while they were residents of New York, and drove it through Oklahoma on their way to their new home in Arizona. They were injured in an accident in Oklahoma and filed a products liability suit against the New York retailer in Oklahoma.

The California Supreme Court distinguished *World-Wide Volkswagen* in a case where a Virginia manufacturer sold to a California user a machine intended for use in California. (*Secrest Machine Corp.* v. *Superior Court* (1983) 33 Cal.3d 664 [190 Cal.Rptr. 175, 660 P.2d 399].) However, there the Virginia manufacturer advertised in a trade journal in California, the use of the product in California generated income for the manufacturer, the manufacturer sent drawings for adaptations to California, sent circulars advertising sale prices to California, the California user consulted about proper maintenance and ordered spare parts from the manufacturer, and the manufacturer sent an employee to California to assist in installation of the machine. All this was held sufficient to allow California jurisdiction. Our case is more like *World-Wide Volkswagen* than *Secrest,* although of course Fronapfel provided only a service and manufactured no product for use in California.

The only possible basis of jurisdiction over Capt. Fronapfel would be on the theory that he did an act in Florida which caused an effect in California. "Even though an act is done elsewhere, if it has effects within a state the state may have jurisdiction, unless the nature of the effects and the

defendant's relationship to the state make its exercise unreasonable. [See] *McGee* v. *International Life Ins. Co.* (1958) 355 U.S. 220 . . . . (See also Judicial Council 1969 Report, p. 79 . . . .)" (2 Witkin, Cal. Procedure (3d ed. 1985) § 109, p. 477.) ■ In *Quattrone* v. *Superior Court* (1975) 44 Cal.App.3d 296, 306 [118 Cal.Rptr. 548], the court discusses this basis of jurisdiction and states: "From *McGee* and *Hanson* we conclude that it is reasonable to exercise jurisdiction on the basis of the defendant intentionally causing 'effects in the state by an omission or act done elsewhere' whenever (a) the acts are of a nature 'that the State treats as exceptional and subjects to special regulation,' or (b) the defendant has, in connection with his causing such effects in the forum state, invoked 'the benefits and protections of its laws.'" Merely causing an effect in California is not in and of itself sufficient to invoke jurisdiction. The nature of the effect and the individual's relationship to the state may make the exercise of jurisdiction unreasonable. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 446 [128 Cal.Rptr. 34, 546 P.2d 322].) In *Sibley* a Florida resident executed a guaranty of the performance of a Georgia corporation as general partner of a California limited partnership. The Georgia corporation failed to perform and suit was brought in California against Sibley, the Florida resident. California was held to have no jurisdiction over Sibley because he had not purposefully availed himself of the privilege of conducting business in California or the benefits and protection of California law. There was no indication he anticipated he would derive an economic benefit from his guaranty, the purposes of the other parties involved in the action who had considerable contacts with California could not be imputed to him, and there was no special legislation by the state on the subject matter of the action involved in this case. Two dissenting justices thought the requisite minimum contacts were present in that the limited partnership was formed in California and maintained its business and office in California and the guaranty was negotiated in California and delivered to the plaintiff in California and the contemplated payments were to take place in California.

In *Floyd J. Harkness Co.* v. *Amezcua* (1976) 60 Cal.App.3d 687 [131 Cal.Rptr. 667], a defendant residing in Mexico who contracted with a California resident to grow and deliver a crop of vegetables was held not to be subject to California jurisdiction even though the California plaintiff had advanced money to finance the production and the defendant had signed promissory notes payable in California and telephone calls had been made between California and Mexico concerning the performance of the contract. These contacts were "too attenuated" to support "jurisdiction." (*Id.,* at p. 691.)

■ The mere fact that a plaintiff is a California resident does not mean that a tortious act committed against him by a defendant outside the state

had an "effect" in California. (See *Thomas J. Palmer, Inc.* v. *Turkiye Is Bankasi A.S.* (1980) 105 Cal.App.3d 135, 152 [164 Cal.Rptr. 181].) However, an act which is done outside the state with the intention of causing effects in California or where it could reasonably be expected that effects in California would result may invoke jurisdiction. For example, if the defendant sought or anticipated economic benefit in California from its out-of-state activities (*Abbott Power Corp.* v. *Overhead Electric Co.* (1976) 60 Cal.App.3d 272 [131 Cal.Rptr. 508]), the limitations of *Sibley* have been held not to apply. This court in *Schlussel* v. *Schlussel* (1983) 141 Cal.App.3d 194 [190 Cal.Rptr. 95, 37 A.L.R.4th 846], has held that a New York resident who made obscene and threatening telephone calls to plaintiffs in California was subject to personal jurisdiction of the California court for the action for negligent infliction of emotional distress because there was a special regulation (Pen. Code, § 653m) making such calls a criminal act and the direct consequence in California of the illegal activity was the subject matter of the complaint.

■ Here we have a Florida resident contracting with a Florida broker to perform a marine survey for the benefit of a California resident with knowledge the vessel would be taken to California. The California resident purchased the vessel in Florida and paid the seller in Florida and took title to the vessel in Florida. The Florida surveyor is alleged to have committed an intentional fraud in Florida. There is no special California regulation governing Fronapfel's activity. No acts were performed by Fronapfel in California. The only "effect" of the fraud alleged to have been committed by Fronapfel would be Farris's loss of money on the transaction. While it might be argued that there was an effect in California in the sense that the loss of the ability to use and resell the vessel would take place in California, the same could be said of every purchase that takes place out of California with knowledge by the seller that the goods may be used in California.

The effects in California of Fronapfel's alleged intentional misrepresentation in Florida are too remote in time and causal connection to fairly and justly require Capt. Fronapfel to come to California to defend himself as a result of this Florida transaction.

The judgment is affirmed.

Wiener, Acting P. J., and Work, J., concurred.