Donald **SHAPIRO**, Plaintiff,

v.

**SUN LIFE ASSURANCE COMPANY OF CANADA, et al., Defendants.**

Civ. A. No. 87–816.

United States District Court, D. New Jersey.

Sept. 24, 1987.

Michael A. Pirolli, Horuvitz, Perlow, Morris & Baker, Bridgeton, N.J., for plaintiff.

Frank A. Luchak, Duane, Morris & Heckscher, Princeton, N.J., for defendants.

## OPINION

RODRIGUEZ, District Judge.

Donald Shapiro brings this action against Sun Life Assurance Company of Canada ("Sun Life") and two Sun Life employees, Paula J. Bonina and Roger A. Montgomery, claiming breach of contract, negligence, and tortious conduct. Bonina and Montgomery now move for dismissal under Fed. R.Civ.P. 12(b)(2), claiming that this court does not have personal jurisdiction over them.

The plaintiff is a New Jersey resident. He has filed a claim seeking payment of disability benefits under an insurance contract with Sun Life. He also seeks punitive damages and attorney's fees from all three defendants.

Sun Life is a Canadian corporation. Its principal place of business in the United States is Massachusetts. Sun Life has a place of business in New Jersey and writes insurance contracts in New Jersey. Both Bonina and Montgomery are Massachusetts residents. Bonina is a claims administrator and Montgomery is a manager at the Wellesley Hills, Massachusetts office of Sun Life. The plaintiff's claim was removed to this court from the Superior Court of New Jersey under 28 U.S.C. § 1441 upon a joint petition by the defendants.

Supporting affidavits were submitted by Bonina and Montgomery. The plaintiff did not file any affidavits to support his brief opposing dismissal. However, the plaintiff did file a request for admissions by Sun Life, Bonina and Montgomery under Fed.R. Civ.P. 36.

The same counsel represents Sun Life, Bonina, and Montgomery. Sun Life through counsel responded to the plaintiff's request for admissions, but Bonina and Montgomery did not respond to the request within the time specified by Rule 36. Accordingly, the court deems admitted for the review of this motion the factual allegations set forth in the request as to defendants Bonina and Montgomery. *See Oroco Marine, Inc. v. National Marine Services, Inc.,* 71 F.R.D. 220, 221–22 (S.D. Tex.1976) (where third-party plaintiff submitted request for admission of facts establishing subject matter jurisdiction and third-party defendant failed to reply within thirty days, jurisdictional facts were deemed admitted under Fed.R.Civ.P. 36(a)). *Cf. Ark–Tenn Distributing Corp. v. Breidt,* 110 F.Supp. 644 (D.N.J.1953), *aff'd,* 209 F.2d 359 (3d Cir.1954); *Freed v. Plastic Packaging Materials, Inc.,* 66 F.R.D. 550, 553 (E.D.Pa.1975).

The plaintiff was paid disability benefits under his Sun Life policy at $900 per month for three months and $600 per month for sixty months based upon Sun Life's determination that the plaintiff had a disability due to "sickness." The plaintiff contends that he had a disability due to an "injury" and therefore under the terms of the insur-

ance contract was due $900 per month for three months and $600 per month for as long as the disability continued.

The essence of the plaintiff's complaint is that Sun Life incorrectly classified plaintiff's disability as resulting from a "sickness" rather than an "injury" and therefore incorrectly stopped the plaintiff's benefits after sixty-three months. The plaintiff claims that Sun Life as a result breached the insurance contract and that all three defendants were negligent. The plaintiff also claims that all three defendants maliciously and intentionally refused to investigate, administer, and adjust the plaintiff's claim, thereby breaching the special fiduciary relationship that the defendants had with the plaintiff. In the case of Bonina and Montgomery, this special fiduciary relationship was based upon their function with Sun Life and their knowledge of the plaintiff's disability.

Defendant Montgomery in his affidavit stated that he was a resident of Massachusetts and worked for Sun Life in Massachusetts as a manager in the Policyholder Service Department; he had never visited New Jersey to evaluate or discuss the plaintiff's disability claim; he had no control over Sun Life's marketing or administrative policies in New Jersey; he had no contacts with the plaintiff other than in his duties with Sun Life; and he would suffer great inconvenience and substantial disruption in his life if he had to appear in New Jersey before this court. Defendant Bonina in her affidavit made the same averments.

The plaintiff's request for admissions shows that the plaintiff through his attorney initiated a series of letters with Sun Life concerning the further investigation and adjustment of plaintiff's claim. Bonina wrote a total of thirteen letters to the plaintiff's attorney. Montgomery wrote three letters to the plaintiff's attorney. Of the letters written by the plaintiff's attorney to Sun Life, fifteen were addressed to the attention of Bonina and two to the attention of Montgomery. Essentially, the parties in their letters disagreed on the need for further evidence to support the plaintiff's claim. Sun Life refused to make a decision concerning the plaintiff's eligibility for continuing benefits until the plaintiff completed a general authorization for Sun Life to obtain information about the plaintiff's disability. The plaintiff through his attorney refused to complete this authorization, contending that Sun Life already had sufficient information to make a decision on his claim.

## I

In determining whether a federal district court can assert jurisdiction over an out-of-state defendant in a diversity action, the court must first determine if the law of the state in which the court is sitting would permit jurisdiction over the defendant. *See* Fed.R.Civ.P. 4(e). Then, if state law permits jurisdiction, the court must determine if jurisdiction over the defendant offends " 'traditional conception[s] of fair play and substantial justice' embodied in the Due Process Clause of the Fourteenth Amendment." *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 464, 105 S.Ct. 2174, 2178, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)).

This court must apply N.J.Ct.Rule 4:4–4(e) [1] to determine whether New Jersey courts would have jurisdiction over Bonina and Montgomery. This rule permits a New Jersey court to assert personal jurisdiction over a nonresident defendant "subject only to 'due process of law.' In other words, [New Jersey] will allow out-of-state service to the uttermost limits permitted by the United States Constitution." *Avdel Corporation v. Mecure,* 58 N.J. 264, 268, 277 A.2d 207 (1971) (citation omitted).

The Supreme Court in *Burger King* set out the function of the due process clause

1. Rule 4:4–4(e) provides that "[w]henever it shall appear ... that, after diligent inquiry and effort, an individual cannot be served in this State under any of the preceding paragraphs of this rule, then, consistent with due process of law, service may be made by mailing ..." N.J. Ct.Rule 4:4–4(e).

with respect to jurisdiction over a nonresident defendant:

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." *International Shoe Co. v. Washington*, 326 U.S. at 319 [66 S.Ct. at 159–60]. By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Shaffer v. Heitner*, 433 U.S..186, 218 [97 S.Ct. 2569, 2587, 53 L.Ed.2d 683] (1977) (Stevens, J., concurring in judgment), the Due Process clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 [100 S.Ct. 559, 567, 62 L.Ed.2d 490] (1980).

471 U.S. at 471–72, 105 S.Ct. at 2182 (footnotes omitted).

The "constitutional touchstone" in a due process analysis of personal jurisdiction "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* at 474, 105 S.Ct. at 2183. The quantity and quality of contacts necessary to meet the constitutional minimum can vary depending on other factors. The interest of the forum state in the litigation, the burden on the defendant, the plaintiff's convenience and interest in obtaining effective relief, and the interests of the states in efficient resolution of controversies are factors to be considered. *Id.* at 477, 105 S.Ct. at 2185. However, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other con-

siderations would render jurisdiction unreasonable." *Id.* Even so, when asserting jurisdiction over a nonresident defendant would be *so* inconvenient to the defendant as to preclude an effective defense, jurisdiction may be unconstitutional. *See id.* at 477–78, 105 S.Ct. at 2185.

In the current case, the plaintiff asks this court to assert specific jurisdiction[2] over Bonina and Montgomery based on the alleged injury to the plaintiff arising from the defendants' actions in Massachusetts. The plaintiff contends that *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), *aff'g* 138 Cal.App.3d 128, 187 Cal. Rptr. 825 (1982), dictates that jurisdiction be found proper. Bonina and Montgomery seek to distinguish *Calder* factually from their situation.

In *Calder*, the plaintiff, a resident of California, sued the National Enquirer, Inc., a Florida corporation and publisher of a national weekly magazine, and two employees of the National Enquirer for libel, invasion of privacy, and intentional infliction of emotional harm. The plaintiff brought the suit in California state court. The two employees were residents of Florida. Defendant South was a writer; Calder was an editor and president of the National Enquirer. South wrote and Calder gave initial approval to and edited an article concerning the plaintiff, a movie actress who lived and worked in California. The article appeared in the National Enquirer magazine, which has its largest state circulation in California. South relied on phone calls to California for information for the article. He made frequent trips to California but not in connection with the article. He also called the plaintiff's husband to obtain his comments on the article. *Calder*, 465 U.S. at 785–86, 104 S.Ct. at 1484–85. Calder "reviewed and approved the initial evaluation of the subject of the article and edited it in its final form. He also declined

---

**2.** A forum state may assert general jurisdiction over a nonresident defendant if, apart from the cause of action, the defendant has sufficiently "substantial" or "systematic and continuous" contacts with the forum state. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 446–48, 72 S.Ct. 413, 418–20, 96 L.Ed. 485 (1952).

Specific jurisdiction may be asserted over a nonresident defendant when the defendant has purposefully directed his activities at the residents of the forum and the litigation arises out of or relates to those activities. *Burger King*, 471 U.S. at 472–73, 105 S.Ct. at 2182–83.

to print a retraction requested by [the plaintiff]." *Id.* at 786, 104 S.Ct. at 1485.

The Supreme Court held that the assertion of jurisdiction over South and Calder under the California long-arm statute[3] did not violate due process. The Court approved the "effects" tests used by the California Court of Appeals:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of [plaintiff's] emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over [South and Calder] is therefore proper in California based on the "effects" of their Florida conduct in California. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–298 [100 S.Ct. 559, 567–68, 62 L.Ed.2d 490] (1980); Restatement (Second) of Conflict of laws § 37 (1971).

*Calder,* 465 U.S. at 788–89, 104 S.Ct. at 1486–87 (footnotes omitted).[4]

The court in *Educational Testing Services v. Katzman,* 631 F.Supp. 550 (D.N.J. 1986), suggested in dictum that "[o]n its face, the effects test would not appear to abolish the minimum contacts requirement necessary in a specific jurisdiction question. However, *Calder* ... appears to do just that." 631 F.Supp. at 563 n. 14 (citation omitted). The *Calder* footnote cited in *Educational Testing Services* states:

> The [California] Court of Appeal further suggested that petitioner South's investigative activities, including one visit and numerous phone calls to California, formed an independent basis for an as-

sertion of jurisdiction over him in this action. In light of our approval of the "effects" test employed by the California court, we find it unnecessary to reach this alternative ground.

*Calder,* 465 U.S. at 787 n. 6, 104 S.Ct. at 1485 n. 6. However, a review of *Calder* and the decision by the California Court of Appeal shows that the "effects" test was not an alternative to the "minimum contacts" requirement. Rather, the "effects" test is another approach to ensuring that the defendant has with the forum state "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 342–43, 85 L.Ed. 278]." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoted in Calder,* 465 U.S. at 788, 104 S.Ct. at 1486. The California Court of Appeal noted that Calder

> did not enter California or even make telephone calls into the state in connection with his role in the preparation of the subject article; all of his acts with reference to that article were performed in Florida. However, the *requisite minimum contacts with the forum state need not arise from his physical activity in that state.* ... "If a defendant commits an act or omission outside the forum state *with the intent* to cause a tortious effect within the state, the state may exercise jurisdiction over the defendant as to any cause of action arising from the effects."

138 Cal.App.3d at 133–34, 187 Cal.Rptr. at 829 (quoting *Kaiser Aetna v. Deal,* 86 Cal. App.3d 896, 902, 150 Cal.Rptr. 615, 619 (1978) (first emphasis added)).

Thus, the Supreme Court's approval of the California court's use of an "effects" test does not eliminate the need for a mini-

---

**3.** The statute involved permitted jurisdiction to the extent permitted by the California and United States Constitutions. *Calder,* 465 U.S. at 786 n. 5, 104 S.Ct. at 1485 n. 5.

**4.** Restatement (Second) of Conflict of Laws § 37 reads:

A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects *unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable. Id.* (emphasis added).

mum contacts analysis in cases where a nonresident defendant's out-of-state conduct causes injury to a forum resident. The Supreme Court has noted that the "forum State does not exceed its power under the Due Process Clause if it asserts personal jurisdiction over a [nonresident] corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World–Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567 (finding, however, that the forum state did not have jurisdiction because the defendants did not establish purposeful minimum contacts with the forum state). Similarly, where the defendant has intentionally acted outside the forum state to cause injury to the plaintiff within the forum state, the relationship between action and effect can be sufficient contact to satisfy due process requirements. *See Calder,* 465 U.S. at 788, 104 S.Ct. at 1486. However, jurisdiction will not be proper in every "effects" case. The Supreme Court has warned against the use of mechanical tests to determine whether jurisdiction is proper. *See Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185–86. *Cf.* Restatement (Second) of the Conflict of Laws § 37 (jurisdiction based on the "effects" test will not be found if "the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable").

The *Calder* Court rejected the argument that South and Calder were not responsible for their employer's circulation of the allegedly defamatory article in California because they had no direct economic stake in such circulation nor were they able to control their employer's marketing activity. 465 U.S. at 789, 104 S.Ct. at 1486–87. The Court stated that South and Calder:

> are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum state must be assessed individually. *See Rush v. Savchuk,* [444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed. 2d 516 (1980) ] ("The requirements of *In-*

*ternational Shoe* ... must be met as to each defendant over whom a state court exercises jurisdiction"). In this case, [South and Calder] are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis.

*Id.* at 790, 104 S.Ct. at 1487.

This court, then, must examine the conduct of each defendant employee individually to determine if jurisdiction pursuant to N.J.Ct.Rule 4:4–4(e) would be permissible under the due process clause for actions by that employee in his or her corporate role.

## II

New Jersey has a strong interest in the current litigation based on the alleged injury to a New Jersey resident. New Jersey presumably is a more convenient forum for the plaintiff than is Massachusetts. Bonina and Montgomery claim that it would be disruptive and inconvenient for them to defend in New Jersey. However, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183. Even considering the interests of New Jersey and the plaintiff in a New Jersey forum, this court finds that Bonina and Montgomery did not purposefully establish sufficient minimum contacts with New Jersey such that jurisdiction over them would be proper.

The letter and telephone calls from Bonina and Montgomery do not in themselves justify jurisdiction. The letters were in response to queries by the plaintiff's attorney. The letters asked for information necessary for the processing of the insurance claim. The letters mainly deal with the one issue of whether additional information was necessary to process the plaintiff's claim. This issue is not shown to arise from other than Sun Life company policy. The nature of the letters and phone calls made to the plaintiff's attorney are not such as to form a substantial connection between either Bonina or Montgomery

and New Jersey. *See id.* at 474–76, 105 S.Ct. at 2183–84.

We also find that the "effects" of Bonina's and Montgomery's actions on the plaintiff do not permit jurisdiction. The plaintiff does not allege that either Bonina or Montgomery intended to harm the plaintiff. Indeed, plaintiff's complaint is essentially against the corporate policies and actions of Sun Life. The nature of the actions of Bonina and Montgomery are distinguishable from the actions of defendants South and Calder in *Calder.* In rejecting the defendants' claim that their employer alone was responsible for the injury to the plaintiff, the *Calder* Court stated that South and Calder were

> not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon [the plaintiff]. And they knew that the brunt of that injury would be felt by [the plaintiff] in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, [South and Calder] must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article.

465 U.S. at 789–90, 104 S.Ct. at 1487 (quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567).

In the current case, neither Bonina nor Montgomery did anything that should have put them on notice of a need to defend themselves in New Jersey. Bonina and Montgomery intended, as far as is shown by the complaint and supporting material, to follow company policy and assist the plaintiff in the processing of his claim. The defendants South and Calder in *Calder* were the "primary participants" in the alleged wrongdoing. *Id.* 465 U.S. at 790, 104 S.Ct. at 1487–88. In contrast, Bonina and Montgomery would be participants in any wrongdoing only as a result of their following Sun Life procedures. The primary cause of the alleged injury is the conduct of

Sun Life. As agents of Sun Life, Bonina and Montgomery were mere conduits of Sun Life policy. For example, Bonina's letter dated August 9, 1985 to the plaintiff states: "You have suggested that Sun Life is not acting properly in requesting a general authorization. Quite frankly, we request a general authorization in every case we investigate. We see no reason to change that procedure in this case." Exhibit EE attached to Request for Admissions. In *Calder,* South and Calder had the power within the scope of their employment to shape the allegedly defamatory article. The plaintiff has not shown that Bonina or Montgomery had the same degree of control.

Furthermore, the *Calder* approval of the "effects" test may have limited application to cases not involving a libel action. *Cf. Educational Testing Services,* 631 F.Supp. at 563 ("*Calder,* while approving the use of the effects test, did so in language closely tied to the facts of the particular libel case. It is still an open question whether, after *Calder,* due process concerns will permit the use of the "effects" test in every tort action."). The California Court of Appeal noted that the "general rule for defamation is that everyone who takes a responsible part in the publication is liable for the defamation." *Jones v. Calder,* 138 Cal.3d at 134, 187 Cal.Rptr. at 829. Bonina and Montgomery would not be liable for the alleged tortious conduct of Sun Life merely because of their part in processing the insurance contract between Sun Life and the plaintiff.

This court finds, therefore, that exercising jurisdiction over Bonina and Montgomery based on the effects in New Jersey of their actions in Massachusetts would be unreasonable. In addition, the quality and quantity of their mail and telephone contacts were not substantial. They thus did not purposefully establish the "minimum contacts" necessary to ensure that due process is not offended by the assertion of jurisdiction over them. This court does not have personal jurisdiction over Bonina and Montgomery. Their motion to dismiss is therefore granted.